[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 31, 2001
THOMAS K. KAHN
CLERK

No. 00-14516

D. C. Docket No. 99-00491-CR-JLK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SABRETECH, INC.,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Florida

**(October 31, 2001)**

Before EDMONDSON, DUBINA and POLITZ*, Circuit Judges.

DUBINA, Circuit Judge:

_____
*Honorable Henry A. Politz, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

On May 11, 1996, a ValuJet commercial airliner crashed in the Florida Everglades and all persons on board perished. It was a tragic accident that could have been avoided. Following an investigation, the government, for the first time, indicted an aviation repair station, SabreTech ("SabreTech"), and several of its employees for various violations related to the transportation of hazardous materials. The record reflects that these aviation repair station personnel committed mistakes, but they did not commit crimes. The jury found SabreTech not guilty of willful violations of the Hazardous Materials Transportation Act ("HMTA"). 49 U.S.C. § 5124 (1994). The jury did, however, find SabreTech guilty of recklessly causing the transportation of hazardous material in air commerce. 49 U.S.C. § 46312 (1994). We hold that the government and the district court improperly relied upon hazardous materials regulations that had not been authorized by the Federal Aviation Act ("FAA), as required by 49 U.S.C. § 46312, to support the reckless counts. As will be discussed *infra*, these counts are a legal nullity. Accordingly, we affirm in part, vacate and remand in part.

## I. BACKGROUND

From July 1995 until June 1999, SabreTech engaged in the repair, modification, and maintenance of commercial aircraft. In January 1996, ValuJet

Airlines delivered three used McDonnell Douglas MD-80 aircraft to SabreTech's facility in Miami, Florida, for major modification and maintenance prior to their introduction into the ValuJet fleet. In the course of overhauling these aircraft, SabreTech's mechanics determined that many of the oxygen generators[1] had exceeded their 12 year service life. ValuJet personnel issued written work orders instructing the mechanics to remove the old oxygen generators and install new ones. The work orders listed steps for SabreTech's mechanics to follow when replacing the old oxygen generators with new ones. The work orders contained a warning that unexpended oxygen generators could generate extremely high temperatures.

In the process of removing the old oxygen generators, mechanic John Taber ("Taber") noticed the absence of shipping caps. Taber asked his supervisor David Wiles ("Wiles") about the shipping caps, and Wiles told him to set the old generators aside and continue working. Taber, along with fellow mechanics Robert Rodriguez ("Rodriguez") and Eugene Florence ("Florence"), then

---

[1] Oxygen generators provide supplemental oxygen to passengers in the event of sudden loss of cabin pressure. A lanyard runs from a mask to an activation device in the generators. When a person pulls the lanyard, it removes a pin which allows a spring-loaded hammer to strike a percussion cap. This initiates a chemical reaction which produces heat. This in turn causes sodium chlorate to decompose and liberate oxygen gas. Because oxygen generators contain sodium chlorate, the authorities list oxygen generators as hazardous materials subject to federal regulations. *See* 49 C.F.R. §§ 171-180 (2001).

proceeded to wrap the lanyards tightly around the firing pins of the generators and tape the ends of the lanyards to the body of the generators to prevent the release of the trigger mechanism. In March 1996, new generators, bearing yellow, diamond-shaped stickers, arrived at the SabreTech facility. The mechanics installed the new generators and tagged the old generators with green "unserviceable" tags on which they wrote "out-of-date" as the reason for removal. The mechanics boxed the generators and stored them in the hangar where they remained for six weeks.

On May 10, 1996, SabreTech shipping clerk Andy Salas ("Salas") re-packed the generators with bubble wrap and placed them in boxes that he sealed with tape. He placed ValuJet "COMAT" labels on the boxes, indicating that the boxes contained ValuJet "company materials." The shipping ticket described the contents as "5 boxes" of "Oxy Canisters Empty." The next day, a SabreTech driver took the boxes to the ValuJet ramp area where Flight 592 was scheduled to depart for Atlanta. ValuJet personnel placed the boxes in the forward section of the aircraft's cargo compartment. Shortly after take-off, a fire erupted on the plane. Flight 592 crashed into the Everglades and killed all 110 persons on board.

On July 13, 1991, a grand jury returned a 24-count indictment against SabreTech and employees Daniel Gonzalez ("Gonzalez"), Florence, and Mario

4

Valenzuela ("Valenzuela).[2]  Count I charged all defendants with conspiracy to make false statements on aircraft maintenance records, in violation of 18 U.S.C. § 1001.  Count II charged Gonzalez with knowingly and willfully making a false statement on a maintenance record, in violation of 18 U.S.C. § 1001.  Counts III - VI charged SabreTech, Florence, and Valenzuela with knowingly and willfully making false statements on ValuJet maintenance records, in violation of 18 U.S.C. §§ 1001-1002.  Counts VII, IX, XI, XIII, XV, XVII, XIX, and XXI charged SabreTech with willfully causing the transportation in air commerce of hazardous materials without complying with packaging, marking, and labeling requirements of hazardous materials regulations, in violation of the HMTA, 49 U.S.C. § 5124, 18 U.S.C. § 2, and 49 C.F.R. §§ 171.2(a), 171.3(a), 172.202(a)(1)-(5), 172.300, 172.301(a), 173.24(e)(4), 173.24(b)(2), 173.24a(a)(3), 173.27(b)(3).  Counts VIII, X, XII, XIV, XVI, XVIII, XX, XXII charged SabreTech with willfully causing the transportation in air commerce of oxygen generators, in violation of the FAA, 49 U.S.C. § 46312, and 18 U.S.C. § 2.  These counts also charged all defendants with recklessly causing the transportation in air commerce of oxygen generators, in violation of 49 U.S.C. § 46312 and 18 U.S.C. § 2.  Count XXIII charged SabreTech with willfully failing to train its employees in accordance with

_____

[2]  Valenzuela skipped bond pre-trial and remains a fugitive.

5

hazardous materials regulations, in violation of 49 U.S.C. § 5124, 18 U.S.C. § 2, and 49 C.F.R. §§ 172.702(a), 172.704(a)(2). Count XXIV charged SabreTech with willfully placing destructive devices on the plane, in violation of the Aircraft Sabotage Act, 18 U.S.C. §§ 31, 32 and 18 U.S.C. § 2.

Prior to trial, SabreTech moved to dismiss the section 46312 counts, arguing that the FAA had not authorized, as required by 49 U.S.C. § 46312, the hazardous materials regulations cited as predicates for the alleged criminal activity. Following argument, a magistrate judge recommended that the counts be dismissed. The district court rejected the recommendation. The trial commenced, and at the conclusion of the government's case, SabreTech renewed its pretrial motion to dismiss the section 46312 counts. The district court denied that motion. SabreTech also moved for judgment of acquittal on the section 46312 counts, the section 5124 counts, and the hazardous materials training count, on the ground that the government had presented insufficient evidence to support these counts. The district court also denied this motion. The district court did, however, grant a judgment of acquittal to Florence, finding the evidence insufficient to support a section 46312 charge against him.

After trial, the jury acquitted SabreTech of Counts I, III-VII, IX, XI, XIII, XV, XVII, XIX, XXI, and XXIV. The jury found SabreTech guilty of Counts

VIII, X, XII, XIV, XVI, XVIII, XX, XXII, and XXIII. The jury acquitted Gonzalez of all charges and Florence of all remaining charges. Following an extensive sentencing hearing, the district court sentenced SabreTech to pay a fine of $2,000,000 and restitution of $9,060,400.

## II. ISSUES

1. Whether the district court erred in denying SabreTech's motion to dismiss the 49 U.S.C. § 46312 counts.

2. Whether the evidence was sufficient to convict SabreTech on the reckless counts and the failure to train count.

3. Whether the district court erred in imposing both a fine and restitution on SabreTech.

## III. STANDARDS OF REVIEW

"The interpretation of a statute is a question of law subject to *de novo* review." *United States v. Hooshmand*, 931 F.2d 725, 737 (11th Cir. 1991). This court reviews *de novo* the sufficiency of the evidence, viewing the evidence in the light most favorable to the government. *United States v. Diaz*, 248 F.3d 1065, 1084 (11th Cir. 2001). "This court ordinarily reviews a district court's restitution

order for abuse of discretion." *United States v. Davis*, 117 F.3d 459, 462 (11th Cir. 1997).

## IV.  DISCUSSION

A.  Validity of Reckless Counts

SabreTech argues that the statutory and regulatory history creates a dichotomy between the HMTA and the FAA that cannot support as a crime the reckless violations of the hazardous materials regulations.  It contends that the reckless counts are a legal nullity.  In these counts, the government alleged that SabreTech should be punished pursuant to 49 U.S.C. § 46312 – the criminal penalty provision of the former FAA – for violation of certain hazardous materials regulations.  Section 46312(a)(2) makes it a crime to recklessly cause to be transported hazardous material in violation of any regulation or requirement prescribed under the FAA.  SabreTech posits that the regulations it was convicted of recklessly violating were not enacted under the FAA.  These regulations were promulgated under a different statutory authority – the HMTA.  That statute penalizes only willful violations of its regulations.  49 U.S.C. § 5124.  Therefore,

SabreTech contends that the government improperly charged it with a crime. We agree.[3]

1. Statutory Overview

By way of background, Congress originally enacted 49 U.S.C. § 46312 in 1949 as Section 902(h) of the Civil Aeronautics Act of 1938, as amended. Pub. L. No. 81-186, 63 Stat. 480 (1949). Section 902 was the criminal penalty provision of the Act. The 1949 amendment made it a crime to deliver knowingly, or cause to be delivered for transportation, or cause the transportation of explosives or other dangerous articles in violation of regulations promulgated by the Civil Aeronautics Board under Title VII of the Civil Aeronautics Act. Thus, at that time, the Civil Aeronautics Board was responsible for the regulation and enforcement of the transportation of explosives and dangerous articles by air.[4]

---

[3] We note at the outset that there is a dearth of case law on this subject. *United States v. Moscowitz*, 883 F.2d 1142 (2nd Cir. 1989), is the only reported case in which a person was charged with "recklessly" transporting hazardous materials on an airplane. The defendant in that case, however, did not raise the issue SabreTech raises here.

[4] Notably, however, at the time, the regulatory authority and responsibility for the regulation of hazardous materials transportation at the federal level was fragmented among several governmental agencies. The Interstate Commerce Commission was responsible for the regulation of surface transportation of explosives and other dangerous articles pursuant to 18 U.S.C. §§ 831-35. Further, the Coast Guard was responsible for the regulation and enforcement of the transportation of these dangerous articles or substances by vessel under the Dangerous Cargo Act pursuant to 46 U.S.C. § 170.

9

In 1958, Congress passed the FAA, Pub. L. No. 85-726, 72 Stat. 731 (1958).
This Act, among other things, transferred the safety regulatory authority contained in the Civil Aeronautics Act to a newly-created independent aviation safety regulatory agency, the Federal Aviation Agency. The FAA retained the provision (Section 902(h)) making it a crime for a person to deliver knowingly, or cause to be delivered, or to cause the transportation of explosives or other dangerous articles if that transportation was prohibited by any rule, regulation, or requirement prescribed by the Administrator under the FAA.

In 1966, Congress created the Department of Transportation to centralize responsibility for the myriad regulatory agencies and cabinet-level departments dealing with transportation. Department of Transportation Act, Pub. L. No. 89-670, 80 Stat. 931 (1966). This creation transferred all of the functions of the formerly independent Federal Aviation Agency to the Secretary of Transportation. Moreover, under this new structure, the Federal Aviation Administrator was responsible for the regulation of air safety, including the transportation of hazardous materials by air. *See* 14 C.F.R. pt. 103 (2001).

This statutory scheme remained in effect until 1974 when Congress enacted the Transportation Safety Act, Pub. L. No. 93-633, 88 Stat. 2156 (1974). Title I of this Act was entitled the "Hazardous Materials Transportation Act." This Act was

a self-contained regulatory and enforcement statute that included its own criminal penalty provision. It established a comprehensive scheme for the regulation of hazardous materials transportation of all modes and gave the Secretary of Transportation responsibility for its regulation. Simultaneously, Congress amended § 902(h) of the FAA to heighten the *mens rea* necessary for a conviction and increase the penalties for a violation. The amendment made it a crime to deliver willfully for transportation in air commerce or to recklessly cause to be transported in air commerce hazardous materials prohibited by regulations issued pursuant to the FAA.

Shortly after the passage of the HMTA, the Secretary of Transportation created the Materials Transportation Bureau ("MTB") to implement the new law. The MTB amended and reissued the authority citations for the hazardous materials regulations. The MTB deleted each of the previous authority citations for the hazardous materials regulations and replaced them with references to the regulatory authority for the new HMTA, 49 U.S.C. §§ 1803, 1804, 1808. Thus, by January 1977, Congress had eliminated any authority for the regulations which may have existed under the FAA, and placed that authority under the HMTA.

The final stage of this evolutionary process occurred in 1994 when Congress codified certain laws related to transportation as Subtitles II, III, and V-X of Title

11

49 of the U.S. Code. Congress codified the HMTA as Chapter 51, 49 U.S.C. §§ 5101-27, and made this a part of Subtitle III – General Intermodal Programs, 49 U.S.C. §§ 5101-27. Congress codified the FAA as Part A – Air Commerce and Safety, 49 U.S.C. § 40101-46507, and made this a part of Subtitle VII – Aviation Programs, 49 U.S.C. § 40101-49105. Congress codified former Section 902(h) of the FAA within Part A as 49 U.S.C. § 46312. Congress modified this section to read as follows:

> A person shall be fined under title 18, imprisoned for not more than 5 years, or both, if the person, in violation of a regulation or requirement related to the transportation of hazardous material prescribed by the Secretary of Transportation under this part –
>
> (1) willfully delivers, or causes to be delivered, property containing hazardous material to an air carrier or to an operator of a civil aircraft for transportation in air commerce; or
>
> (2) recklessly causes the transportation in air commerce of the property.

49 U.S.C. § 46312.

Thus, at the time of the ValueJet crash, criminal liability existed for willful violations of the hazardous materials regulations promulgated pursuant to the HMTA. Criminal liability also existed for reckless violation of regulations authorized by Part A – Air Commerce and Safety, Subtitle VII, an entirely separate subtitle. The criminal penalties were distinct. Therefore, only regulations adopted

12

under the authority of the FAA in Part A could provide the predicate for prosecuting a reckless violation. *See* 49 U.S.C. § 46312. However, the government charged SabreTech with recklessly violating regulations promulgated pursuant to the HMTA. That Act contains no criminal liability for recklessly violating the hazardous materials regulations.

2. Regulatory Overview

The Department of Transportation's Research and Special Programs Administration ("RSPA"), the successor agency to the MTB, administered a comprehensive scheme for the regulation of hazardous materials transportation. These hazardous materials regulations are contained in 49 C.F.R. §§ 171-180. At the beginning of each of these parts, the RSPA cites 49 U.S.C. §§ 5101-5127 as the only authority for promulgating each part. The RSPA does not cite any statutory authority found in Part A– Air Commerce and Safety. Thus, during the pertinent time-frame involved here, none of the regulations cited in the reckless counts were issued pursuant to the statutory authority contained in Part A – Air Commerce and Safety.[5]

---

[5] We note that in December 1996, after the crash at issue, the RSPA did revise the authority section of Part 173 to add 49 U.S.C. § 44701. At the same time, the RSPA issued the final regulation prohibiting the transportation of oxygen generators on board passenger-carrying aircraft. *See* 61 Fed. Reg. 68952, 68953 (1996). Section 44701 is a safety regulatory provision contained in Part A – Air Commerce and Safety that was formerly Section 601 of the FAA.

13

The statutory and regulatory history demonstrate that at the time of the crash, the HMTA was the only authority for the hazardous materials regulations under which the government indicted SabreTech. That Act punishes willful violations, not reckless ones. In sum, none of the hazardous materials regulations in existence in May 1996, and relied upon in the indictment, were based upon statutory authority contained within Part A – Air Commerce and Safety. Therefore, the reckless counts are invalid, and the district court erred in denying SabreTech's motion to dismiss them.

B. Sufficiency of the Evidence[6]

Based on our review of the record, we conclude there was sufficient evidence presented at trial to support SabreTech's conviction for willfully failing to train its employees in accordance with the hazardous materials regulations. The evidence demonstrates that SabreTech had a manual instructing personnel with regard to the handling and packaging of hazardous material. Thus, the jury could infer that SabreTech knew about the regulations dealing with the handling and packaging of hazardous material and knew that it should inform its employees of these regulations. Moreover, several SabreTech employees testified that they

---

[6] In light of our conclusion that the reckless counts are a legal nullity, it is not necessary for us to discuss SabreTech's argument that the evidence was insufficient to support the convictions on those counts.

received no hazardous materials training while employed with SabreTech. In light of this evidence, we affirm SabreTech's conviction on Count XXIII. *See United States v. Massey*, 89 F.3d 1433, 1438 (11th Cir. 1996) (all reasonable inferences and credibility choices must be made in favor of the verdict).

## V. CONCLUSION

As stated previously, this was a tragic accident that needlessly claimed the lives of over 100 people. That loss is irreplaceable. However, the record is clear that SabreTech and its employees did not intend to kill these people when it packed the old oxygen canisters and transported them to the ValuJet aircraft. Furthermore, the statutory and regulatory history demonstrates that the regulations cited as predicates for the alleged criminal activity were invalid. Because the district court improperly relied on the hazardous materials regulations as predicates for the alleged criminal activity, we vacate SabreTech's convictions on the reckless counts. Because there was sufficient evidence presented to the jury on the willful failure to train count, we affirm that conviction. Finally, we remand this case to the district court for re-sentencing.[7]

---

[7] On resentencing, the district court cannot impose any restitution on SabreTech's conviction on Count XXIII because 18 U.S.C. § 3663(a)(1)(A) allows restitution only upon convictions under 49 U.S.C. § 46312. We further note that our disposition of the reckless counts negates any discussion on SabreTech's argument concerning restitution since there is now no basis for restitution in any amount. *See* 18 U.S.C. § 3663(a)(1)(A)(1994).

15

**AFFIRMED in part, VACATED in part, and REMANDED**.