**UNITED STATES of America**

v.

**Bernard WILLIAMS, Defendant.**

**No. 02–CR–897 (NG).**

United States District Court,
E.D. New York.

Sept. 17, 2003.

Assistant United States Attorney Michael Asaro Brooklyn, for plaintiff.

Mel A. Sachs, for defendant.

## *ORDER*

GERSHON, District Judge.

Defendant Bernard Williams was convicted on July 16, 2003, following a jury trial, of recklessly causing the transportation in air commerce of hazardous materials in violation of 49 U.S.C. § 46312. Defendant now brings this motion, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, for a judgment of acquittal or, in the alternative, a new trial, on the following four grounds: 1) that the jury was wrongfully charged that reckless conduct on the part of defendant could give rise to criminal liability; 2) that the government failed to satisfy its burden of proving, beyond a reasonable doubt, that defendant acted knowingly and intentionally, and recklessly, in relation to the crime charged; 3) that the denial of defendant's application to put on a sur-rebuttal case deprived him of a fair trial; and 4) that the court improperly permitted the substitution of two alternate jurors after the jury began its deliberations. For the following reasons, defendant's motion is denied.

Briefly, taken in the light most favorable to the government, the evidence at trial established the following:

On February 15, 2002, defendant, Bernard Williams, boarded Spirit Airlines Flight 488 from Fort Myers, Florida to LaGuardia Airport in Queens, New York after checking two large cardboard boxes containing 14 one-gallon containers of highly-concentrated ammonia. The boxes bore the commercial imprint "Cat's Pride Kitty Litter." Spirit Airlines ticket agent, Madeline Carr, testified during the trial that defendant stated that he packed the boxes himself, that they had not been out of his possession since the time of packaging, and that they contained kitty litter. Defendant repeated his claim that the boxes contained kitty litter to Ms. Carr's supervisor. Defendant paid a $50 overweight charge for the boxes.

Once Flight 488 was airborne, a noxious smell was detected in the passenger cabin. Several passengers on the flight became nauseous and developed difficulty breathing. Medical personnel met the plane upon landing and an investigation ensued. Inspection of the plane's cargo bay indicated that one of the bottles of ammonia in defendant's checked baggage had broken and was the cause of the fumes. Accord-

ing to the testimony of law enforcement personnel who spoke to defendant at the airport on the night of the incident and in interviews several weeks later, defendant admitted that the boxes of ammonia were his.

The theory of the defense, presented through various witnesses at trial, was that defendant had purchased both the ammonia and kitty litter in Florida and believed that he was transporting the kitty litter on the airplane. According to the testimony of law enforcement personnel at trial, defendant did not tell any of the three officers who interviewed him that he had mistakenly transported the ammonia.

## I. Liability for Reckless Conduct

Title 49 of the United States Code, Section 46312, provides criminal penalties for a person who, "in violation of a regulation or requirement relating to the transportation of hazardous material prescribed by the Secretary of Transportation under this part ... recklessly causes the transportation in air commerce of the property." Both the government and defendant agree that "under this part" refers to Subtitle VII of Title 49. Defendant argues that reckless conduct cannot give rise to criminal penalties under Subtitle VII because the regulations defendant is charged with violating were not promulgated pursuant to that Subtitle.

The provisions governing transportation of hazardous material by air were originally enacted as part of the Hazardous Materials Transportation Act ("HMTA"), a comprehensive scheme to "protect the nation adequately against the risks to life and property which are inherent in the trans-portation of hazardous materials in commerce." "Declaration of Policy," Sec. 102, HMTA, P.L. No. 93–633 (1975), *codified as former* 49 U.S.C. § 1801. In enacting the HMTA, Congress created an explicit statutory link between the former Department of Transportation Act, P.L. No. 89–670 (1966), which regulated the transportation of hazardous material by ground, rail, and sea, and the Federal Aviation Act, P.L. No. 85–726 (1958), which regulated the transportation of hazardous material by air: "In carrying out his responsibilities under this Act, the Secretary of Transportation may exercise the authority vested in him by section 105 of the HMTA to provide by regulation for the safe transportation of hazardous materials by air." "Relation to Other Laws," Sec. 112, HMTA, P.L. No. 93–633 (1975), *codified as former* 49 U.S.C. § 1811. Pursuant to that regulatory power, the Secretary of Transportation created a Materials Transportation Board which issued extensive regulations relating to hazardous materials transportation. These regulations set forth specific marking, classing, and packaging guidelines for the transportation of hazardous materials. *See* 49 C.F.R. §§ 171, 172, and 173.

In 1994, Congress re-codified the provisions of the HMTA relating to air transportation under Subtitle VII of Title 49 and those relating to ground, rail, and sea transportation under Subtitle III of Title 49.[1] Section 40113(b) of Subtitle VII provides that "the Secretary has the same authority to regulate the transportation of hazardous material by air that the Secretary has under Section 5103," the provision providing promulgation authority for the

---

1. Subtitle III also contains some general provisions relating to air transportation, *see, e.g.,* 49 U.S.C. § 5110 (requiring vehicles, including aircraft, to maintain shipping papers containing a description of the hazardous material being shipped), as well as specific provisions relating to air transportation of radioactive hazardous materials. *See, e.g.,* 49 U.S.C. 5114.

regulation of hazardous material transportation by ground, rail, and sea under Subtitle III. Subtitle III provides criminal penalties for knowingly tampering with packages or vessels containing hazardous materials and for willful violations of its other provisions. *See* 49 U.S.C. §§ 5104(b), 5124. Subtitle VII provides criminal penalties for willful delivery of hazardous materials in air transportation and for recklessly causing the transportation in air commerce of hazardous materials. *See* 49 U.S.C. § 46312. In May 2000, Congress further amended the criminal penalty provisions of Subtitle VII to remove, as an element of the offense, knowledge of the specific regulations being violated. *See* P.L. No. 106–181. Title V, § 507 (2000), *codified as* 49 U.S.C. § 46312(b). This history demonstrates a Congressional intent to expand the criminal enforcement powers of the Secretary of Transportation in relation to violations of the hazardous materials regulations relating to air commerce. Nothing in this history indicates an intent to lessen those enforcement powers.

Nonetheless, in *United States v. Sabretech, Inc.*, 271 F.3d 1018, 1024 (11th Cir. 2001), the Court of Appeals for the Eleventh Circuit dismissed charges against a defendant aviation repair station on the ground that "none of the hazardous material regulations in existence in May 1996 … were based upon statutory authority contained within" Subtitle VII. The *Sabretech* court concluded that the reckless conduct counts against defendant, brought pursuant to the criminal penalty provisions of that Subtitle, were a "legal nullity." *Id.* at 1020.

█ No decision, in this or in any other Circuit, citing *Sabretech* or discussing the issues it raised has been cited to this court, nor has independent research uncovered any. The only other reported decision involving the statute at issue, *United States v. Moskowitz*, 883 F.2d 1142 (2d Cir.1989), assumed a proper linkage between the hazardous materials regulations and the criminal penalty provisions relating to transportation of such materials in air commerce. Although decided prior to the 1994 re-codification discussed at length in *Sabretech*, the Court of Appeals' decision in *Moskowitz* is highly instructive. In *Moskowitz*, the Court of Appeals for the Second Circuit affirmed the conviction of a defendant under 49 U.S.C. § 1472(h), the criminal penalty provision of the Federal Aviation Act later re-codified as 49 U.S.C. § 46312, based on defendant's reckless violation of regulations contained in 49 C.F.R. §§ 171 *et seq.* At the time *Moskowitz* was decided, the regulations cited, as their sole source of statutory authority, the criminal and civil penalty provisions of the HMTA, then codified as 49 U.S.C. §§ 1803, 1804, and 1809, which provided criminal penalties only for willful violations of the regulations. Nonetheless, both the district court and the Court of Appeals in *Moskowitz* assumed that reckless violations of those regulations could give rise to criminal penalties under 49 U.S.C. § 1472(h). For the reasons that follow, I agree with that assumption and decline to follow the Eleventh Circuit's decision in *Sabretech*.

As noted above, Section 46312 of Subtitle VII provides criminal penalties for persons who violate the hazardous material regulations relating to air commerce. Under the *Sabretech* court's analysis, however, not one of the dozens of hazardous material regulations relating specifically to air commerce contained in 49 C.F.R. §§ 171–180 could, during the time frame considered by the court in that decision, have given rise to criminal penalties under Subtitle VII. I cannot conclude that this narrow construction of the relationship between the statutes and the regulations re-

flects Congressional intent. The history of the statutes at issue demonstrates that Congress intended to increase the Secretary of Transportation's power to enforce the regulations relating to the transportation of hazardous materials in air commerce. Under the reasoning of *Sabretech,* however, no link between the criminal enforcement provisions of Subtitle VII and the regulations relating to the transportation of hazardous materials existed during the time frame considered by the court. The *Sabretech* decision therefore rendered the whole of 49 U.S.C. § 46312 (which contains penalties for both willful and reckless conduct) devoid of meaning.

I further find that the *Sabretech* court's apparent deference to the citation of statutory authority contained in the beginning of each subpart of the Code of Federal Regulations was unwarranted. While the court owes *Chevron* deference to an administrative agency's reasonable interpretation of the statute it is charged with enforcing, *see Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), neither the defense nor the *Sabretech* court cite any basis for granting deference to the citation of statutory authority contained in a subpart of the agency's regulations. *See Community Health Center v. Wilson–Coker,* 311 F.3d 132, 138 (2d Cir.2002) (describing generally the type of agency regulation which is entitled to deference). Moreover, even if the attribution of statutory source were itself a regulation issued through notice and comment, that attribution would not be entitled to deference because it does not reflect a reasonable interpretation of the relevant statutes. As noted above, such a narrow construction of the relationship between the hazardous materials regulations and the statutes which provide criminal penalties for their violation neither reasonably reflects Congressional intent nor the complexity of the statutes' history.

Finally, even if this court were to follow the *Sabretech* court's reasoning, intervening amendments to the hazardous materials regulations would sustain defendant's conviction in this case. The jury found the defendant guilty of violating regulations contained in 49 C.F.R. §§ 171, 172, and 173. The regulatory authority cited in the Code of Federal Regulations for Part 173 includes (correctly, in my view) both the enforcement provisions of Subtitle III and the enforcement provisions of Subtitle VII. Part 173.22(a) of the Code of Federal Regulations incorporates the marking and classing regulations contained in Part 172. Since Subtitle VII indisputably provides criminal liability for reckless conduct, reckless violations of the regulations contained in Part 173, and by incorporation those contained in Part 172, are subject to criminal sanctions under 49 U.S.C. § 46312 even if *Sabretech* were followed. (The *Sabretech* court recognized the significance of the revisions to Part 173, but analyzed the defendant's conduct under a prior, unamended version of the regulation because the airline crash at issue pre-dated the amendment. *Sabretech,* 271 F.3d at 1024 n. 5.)

For all of the above-stated reasons, defendant's motion to dismiss his conviction on the ground that criminal liability cannot be premised on reckless violations of the regulations is denied.

## II. Sufficiency of the Evidence

■■■ Federal Rule of Criminal Procedure 29(a) provides that, on a defendant's motion, a court must "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." In deciding a motion brought pursuant to Rule 29(a), a court must draw all

reasonable inferences in favor of the government and must resolve all issues of credibility in favor of the jury's verdict. *U.S. v. Weiss*, 930 F.2d 185, 191 (2d Cir. 1991); *U.S. v. Mariani*, 725 F.2d 862, 865 (2d Cir.1984). A defendant challenging the sufficiency of the evidence against him "bears a very heavy burden," *U.S. v. Scarpa*, 913 F.2d 993, 1003 (2d Cir.1990), and must demonstrate that "no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *U.S. v. Leslie*, 103 F.3d 1093, 1100 (2d Cir.1997). Defendant has not met that burden.

In order to convict defendant of recklessly causing the transportation in air commerce of property containing hazardous material, the government was required to prove beyond a reasonable doubt that defendant caused the transportation in air commerce of hazardous material in violation of a regulation or requirement prescribed by the Secretary of Transportation; that he acted knowingly and intentionally; and that he acted recklessly in causing such transportation. Tr. at 692–95. Defendant argues that the government failed to prove the last two of these three elements.

Although the defense theory in this case was that defendant believed that he was bringing kitty litter on board the flight and that his actions were therefore the result of an accident or mistake, the jury clearly rejected that theory and accepted the government's evidence, both direct and circumstantial, that defendant knew that he was transporting concentrated ammonia, a hazardous material. To begin with, there was ample evidence of defendant's knowledge of the hazardous nature of the concentrated ammonia he transported. It was undisputed that defendant personally purchased the bottles of ammonia, each of which bore a conspicuous warning label, while traveling in Florida. It was also undisputed that defendant had substantial prior experience with ammonia in a concentrated form and that he therefore knew that the ammonia needed to be diluted prior to safe use. Indeed, defendant's own witnesses testified extensively on these two points. Special Agent Shoemaker also testified that defendant reported that he was aware that the ammonia he transported was highly concentrated and needed to be diluted prior to use.

The government also presented ample evidence of defendant's knowledge that he was causing the transportation of ammonia, as opposed to kitty litter. Madeline Carr, the Spirit Airlines ticket agent who handled defendant's check-in procedures, testified that defendant stated that he personally packed the materials for shipment and that they had been in his possession the entire time since he packed them. After the flight landed, defendant acknowledged to law enforcement personnel that the ammonia belonged to him and that he knew the quantity of the ammonia contained in the boxes checked.

As for the recklessness element, the jury was charged that the government bore the burden of proving beyond a reasonable doubt that "the defendant was aware of a high probability that his actions would result in the transportation in air commerce of hazardous material in violation of the regulations of the Secretary of Transportation and that he deliberately disregarded a substantial and unjustifiable risk that, if he presented mislabeled and mispackaged hazardous material for air transportation, the material would be transported as if it were not hazardous material." Tr. at 694. In addition to the evidence described above regarding defendant's knowledge that he was transporting a hazardous material, the government presented further evidence of defendant's ef-

forts to conceal that fact from the airline. Ms. Carr testified that defendant declined her suggestion that he open the boxes and remove some of the kitty litter he claimed they contained to avoid an overweight fee. Her supervisor testified that, when he asked defendant why he was shipping such a large quantity of kitty litter, defendant replied that he had obtained a good deal on it. The government also offered into evidence the boxes that defendant presented for shipment and a demonstrative exhibit consisting of a box labeled and marked in accordance with federal regulations governing the shipment of hazardous materials. This evidence was sufficient for a rational trier of fact to conclude that defendant deliberately disregarded a substantial and unjustifiable risk that, by presenting a mislabeled and mispackaged box containing hazardous material for air transport, the material would be transported as if it were not hazardous.

### III. Denial of Defendant's Request to Call a Sur–Rebuttal Witness

■ Defendant argues that the denial of his application to present sur-rebuttal evidence regarding his English language capacity deprived him of a fair trial. "The decision whether to allow a party to present evidence in sur-rebuttal is committed to the sound discretion of the trial court." *U.S. v. Wilford,* 710 F.2d 439, 452 (8th Cir.1983). *See also U.S. v. Stirling,* 571 F.2d 708, 736 (2d Cir.). *cert. denied,* 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978). In this case, defendant was not deprived of a fair opportunity to present evidence on his behalf. Defense counsel's sole proffer at trial in relation to the proposed surrebuttal case was that defendant's daughter would testify that she assisted her father in preparing one of the affidavits presented by the government as evidence of defendant's English language capacity. Defense counsel also proposed,

after the defense had rested, that he be permitted to call the official court interpreter to testify as to defendant's ability to speak English. Since defendant's daughter testified earlier during the trial that she assisted her father in preparing his legal documents and since several of defendant's witnesses testified that defendant had limited English language capacity, such testimony would have been merely cumulative of testimony already in evidence. Moreover, the material used by the government to prove defendant's capacity for English consisted entirely of a signed affidavit and statements by defendant at prior proceedings in this case. Defendant clearly had knowledge of the existence of the affidavit and of his statements during prior proceedings, and the government's use of them at trial could hardly have been a surprise.

As for defendant's argument that the government presented evidence of his knowledge that the ammonia posed a substantial risk of harm for the first time during rebuttal testimony, that argument is entirely without merit. The evidence of his knowledge that the ammonia posed a substantial risk of harm was presented in the government's case in chief. The government's rebuttal case consisted exclusively of the above-mentioned affidavit and statements indicating defendant's familiarity with English and of the testimony of Special Agent Alma Certa. Special Agent Certa testified that the brand of kitty litter the defense claimed defendant thought he was transporting on board the flight could be purchased for less than $15 at a store less than 10 minutes away from defendant's home in Connecticut. This testimony did not relate to defendant's knowledge that the ammonia posed a substantial risk of harm. Defense counsel did not proffer any evidence to rebut Special Agent Certa's testimony, nor did he proffer any evi-

dence in relation to defendant's knowledge that the ammonia posed a substantial risk of harm.

In sum, there was no prejudice or unfairness in denying defendant's request to present surrebuttal evidence.

## IV. Juror Substitution

■ Defendant's final challenge to his conviction stems from his objection to this court's substitution of two alternate jurors following the commencement of deliberations. Federal Rule of Criminal Procedure 24(c)(1) provides that a "court may impanel up to 6 alternate jurors to replace any jurors who are unable to perform or who are disqualified from performing their duties." Rule 24(c)(3) provides that "[i]f an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew." In this case, all the requirements of Rule 24 were complied with strictly. There was no indication that either of the dismissed jurors sought dismissal for any reason other than physical incapacity. At the time of substitution of the two alternates, the jury was instructed to begin its deliberations anew. There is no basis in the record for concluding that the jury did not follow those instructions. Defendant's argument that the relatively short length of time the jury deliberated after the substitution of the alternates indicates that they failed to follow the Court's instructions is mere speculation and cannot serve as a basis for vacating the jury's verdict.

### *Conclusion*

For the reasons discussed above, defendant's motion is denied.

**SO ORDERED.**