**Angel CORDERO, Petitioner,**

v.

**Israel RIVERA, Respondent.**

**No. 05 Civ. 9758(SHS).**

United States District Court, S.D. New York.

Dec. 29, 2009.

Angel Cordero, Napanoch, NY, and Angel Cordero, Coxsackie, NY, pro se.

Robert T. Johnson, Jennifer Marinaccio, Office of the District Attorney, Bronx County, Bronx, NY, for Respondent.

### OPINION & ORDER

SIDNEY H. STEIN, District Judge.

Petitioner Angel Cordero seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. As initially filed in October 2005, the petition sought relief based on five asserted claims of error stemming from Cordero's June 2000 New York state court conviction for robbery, attempted murder, assault, and resisting arrest. However, in February 2007, this petition was stayed at Cordero's request so as to allow a New York state court to review "newly discovered evidence" that Cordero claimed established his innocence. That evidence—a confession by another man, Dario Rodriguez, to having committed these crimes— was evaluated by a state court judge who concluded, by decision dated January 22, 2008, that the confession was not credible and thus did not warrant granting Cordero post-conviction relief.

Thereafter, this petition resumed, and, on April 2, 2009, Magistrate Judge Ronald L. Ellis issued a Report and Recommendation summarizing the factual and procedural history of petitioner's state conviction and appeals process, addressing the five claims raised in Cordero's initial petition, and recommending that the petition be denied as meritless. The Report declined to address Cordero's newly discovered evidence claim, finding that while the claim had been brought to the magistrate judge's attention, Cordero had failed to formally amend his petition to include it.

Petitioner filed timely objections to the magistrate's Report and Recommendation, objecting both to its failure to consider the newly discovered evidence claim and to its recommendation that each of petitioner's remaining claims be rejected. In particular, Cordero contends the newly discovered evidence claim "relates back" to his initial petition and is therefore timely and should be considered. With respect to the claims the Report did address, Cordero argues the magistrate judge wrongly concluded each was insufficient to warrant granting habeas relief.

The Bronx county district attorney's office responded to those objections, arguing that the Report correctly found both that petitioner's initial claims were insufficient and that the newly discovered evidence claim should not be considered because Cordero never formally amended his petition to include it. With respect to. that newly discovered evidence claim, respondent argued further that even had the magistrate judge considered it, he would have found it insufficient for the reasons set forth by the state court judge—i.e., the confession was not credible and thus not likely to have altered the outcome of Cordero's initial trial.

After de novo review of the magistrate's Report and Recommendation, petitioner's

objections, and respondent's submissions in opposition to those objections, *see* 28 U.S.C. § 636(b)(1) (B and C), the Court adopts the Report's finding that none of petitioner's five initial claims is sufficient to warrant granting the writ of habeas corpus.

With respect to the newly discovered evidence claim, the Court will construe petitioner's objections to the Report and Recommendation as a request to amend his petition to include that new claim. The Court will allow the amendment as one that "relates back" to the initial, timely habeas petition because it arises from the same "conduct, transaction, or occurrence" giving rise to one of his initial claims, specifically, his claim that Rodriguez perjured himself at trial. *See* Fed.R.Civ.P. 15(c)(1)(B); *cf. Mayle v. Felix*, 545 U.S. 644, 664, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005). Moreover, because the interests of justice and judicial efficiency counsel in favor of adjudication of the claims raised and all parties have now had an opportunity to brief the issues raised by Cordero's newly discovered evidence, no party will be prejudiced by consideration of that claim at this time. *See* Fed.R.Civ.P. 15(a)(2); *see also Sanofi–Synthelabo v. Apotex, Inc.*, No. 02 Civ. 2255(SHS), 2006 WL 3103321, at *1, 2006 U.S. Dist. LEXIS 80203, at *4 (S.D.N.Y. Nov. 2, 2006) (leave to amend should be "freely granted" absent evidence of prejudice to opposing party).

Accordingly, while adopting Magistrate Judge Ellis's finding and recommendation that all of petitioner's original claims are insufficient to warrant habeas relief, the Court will now address Cordero's newly discovered evidence claim as well. For the reasons set forth below, the Court concludes that claim is also insufficient to warrant the relief petitioner seeks. Accordingly, Cordero's petition—including his newly discovered evidence claim—is denied in full.

## I. BACKGROUND

While a full account of the factual and procedural history of this case is contained in Magistrate Judge Ellis's Report and adopted by this Order, the Court revisits portions of that history here for the limited purpose of addressing petitioner's newly discovered evidence claim:

In the early morning hours of May 16, 1999, Jason Mercado was walking home in the Bronx when he was assaulted and robbed by a group of five individuals. (Trial Transcript ("Tr.") at 157, 163.) Cordero, who was in the immediate vicinity, was arrested along with his co-defendant Ramon Rivas, by four plain clothes police officers who witnessed the attack from their unmarked car. (*Id.* at 43–36.) Cordero was charged with robbery, attempted murder, assault, and resisting arrest.

Cordero was tried before a jury in Bronx County Supreme Court in June of 2000. At trial, the prosecution presented five eyewitnesses—Mercado, and the four police officers—each of whom testified that Cordero participated in the assault and robbery resulting in his arrest. (*Id.* at 43–48; 144–45; 253; 356; 434.) Despite that testimony, the defense's theory of the case was that Cordero, who had no criminal history at the time, had been wrongly identified, (*id.* at 785, 838), and that the real assailant was Dario Rodriguez, a neighborhood drug dealer and gang member. In support of that theory, Cordero put on three witnesses at trial each of whom attested to their personal knowledge of Rodriguez's involvement in the attack on Mercado. (*Id.* at 618, 654, 723.)

In rebuttal, the prosecution relied on the testimony of Mercado who expressly rejected the possibility that Rodriguez in-

stead of Cordero had attacked him (*id.* at 18, 180) as well as on the testimony of Rodriguez himself who testified that while he had seen the commotion from a distance, he had not actually been involved in the attack. (*Id.* at 893–94.)

On June 29, 2000, after two days of deliberations, the jury returned a guilty verdict, convicting petitioner Cordero and his co-defendant Rivas on all counts. (*Id.* at 1190–92.) Cordero then exhausted his state court appeals before filing the instant petition on October 17, 2005.

Approximately one year later, on November 28, 2006, Dario Rodriquez signed a notarized, four-page statement in which he confessed that he—not Cordero—had stabbed Mercado on May 19, 1999. In that statement, Rodriguez further admitted that he perjured himself in his testimony at Cordero's trial and averred that, despite his initial testimony, Cordero had not been involved in the attack on Mercado at all. (Aff. of Dario Rodriguez dated Nov. 28, 2006 ¶¶ 2, 4–7.)

Based on this newly discovered evidence, Cordero filed a new motion in New York state court pursuant to New York Criminal Procedure Law § 440.10 seeking to have his conviction overturned. All parties then agreed to stay proceedings in this Court pending resolution of the state court motion. (Letter from Claudia S. Tripp, Att'y for Petitioner, to Mag. Judge Ronald E. Ellis dated Feb. 28, 2007.)

On October 22, 2007, Bronx County Supreme Court Justice Harold Adler held a hearing on Cordero's section 440.10 motion at which Rodriguez testified under oath regarding his November 2006 confession. As detailed in his subsequent Decision and Order, Justice Adler found that "Rodriguez's demeanor during his testimony—his combative behavior, his strained evasions, his contrived character, his hostile refusals to answer questions, his peculiarly sup-

pressed smiles—reflect poorly upon his credibility." *People v. Cordero,* Ind. No. 3393/99, Decision & Order at 16 (N.Y.Sup. Ct. Jan. 22, 2008). Moreover, given that Rodriguez's new version of the events "strongly conflicts with much of the pertinent trial testimony"—including the testimony of the victim and four police officers, all of whom identified Cordero, not Rodriguez, as the assailant—Justice Adler determined that Rodriguez's attempt to exculpate Cordero were "utterly incredible and unworthy of belief." *Id.* Accordingly, Justice Adler denied Cordero's section 440.10 motion by order dated January 22, 2008.

This federal habeas petition then resumed, and on April 2, 2009, Magistrate Judge Ellis issued his Report recommending Cordero's petition be denied but declining to address Cordero's newly discovered evidence claim. In papers submitted to the Court in response to that Report, both parties have now had the opportunity to address the newly discovered evidence claim as well as Justice Adler's determination that Rodriquez's confession was not credible and thus did not warrant overturning Cordero's conviction.

## II. DISCUSSION

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court reviewing claims raised and adjudicated on the merits in state court may only grant a writ of habeas corpus if that state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

Where the state court decision rests on a factual determination, habeas is appro-

priate only if the federal court finds that the "decision ... was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Moreover, state court factual determinations are "presumed to be correct," and a petitioner challenging them bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254; *see also McKinney v. Artuz,* 326 F.3d 87, 101 (2d Cir.2003) (citations omitted).

■ Here, Cordero's new claim—that Rodriguez's recantation of his trial testimony establishes petitioner's innocence— was fully presented to a state court which rejected it after making the factual determination, based on an evidentiary hearing at which Rodriguez testified and was subject to cross examination, that Rodriguez was "utterly incredible and unworthy of belief." *People v. Cordero,* Ind. No. 3393/99, Decision & Order at 16 (N.Y.Sup. Ct. Jan. 22, 2008). That adjudication on the merits and premised on the state court's firm and unequivocal factual determination is thus entitled to a presumption of correctness. Indeed, the Second Circuit instructs that "this presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility" because such "[c]redibility determinations are properly within the province of the state court that presided over the trial and evidentiary hearing." *Shabazz v. Artuz,* 336 F.3d 154, 161, 163 (2d Cir.2003).

■ And while that required deference to the state court's finding "does not by definition preclude relief," *Miller–El v. Cockrell,* 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003), it does shift the burden to petitioner to rebut that presumptive correctness of the state court finding by clear and convincing evidence.

*Shabazz,* 336 F.3d at 161 (citing *Wedra v. Thomas,* 671 F.2d 713, 717 (2d Cir.1982)); *see also McKinney v. Artuz,* 326 F.3d 87, 101 (2d Cir.2003). This Cordero has not done. Indeed, the Court finds there is no basis for concluding that the state court's explicit determination that Rodriguez's recantation was not credible was unreasonable based on this record.

The state court determination was based on an evidentiary hearing at which Rodriguez testified and was subject to cross examination. In reaching its conclusion that Rodriquez's recantation was not credible the state court provided specific examples of *why* it found Rodriquez to be "incredible," including Rodriguez's behavior during the hearing, his professed knowledge that the statute of limitations had lapsed and he thus could no longer be prosecuted for the crime he was now "confessing" to, and the inconsistencies between Rodriguez's new testimony and the testimony and other evidence adduced at Cordero's initial trial.

In his filings before this Court, Cordero points to nothing that would draw those findings—which comport with the well-settled law of this Circuit that recantations are to be viewed as "highly suspect" *Sanders v. Sullivan,* 863 F.2d 218, 225 (2d Cir.1988)—into question. He certainly does not put forward "clear and convincing evidence" that the state court's factual determination was "unreasonable" given the record the state court had before it. Accordingly, the Court finds no reason to disturb the state court's factual determination that Rodriguez's recantation was not credible and thus does not warrant postconviction relief.

■ Nevertheless, where a petitioner seeks habeas relief based on alleged perjury by a trial witness, a determination that the witness's recantation "lack[s] ... ve-

racity" is not by itself sufficient grounds to deny the claim. *Ortega v. Duncan*, 333 F.3d 102, 107 (2d Cir.2003). Instead, "the court must weigh all the evidence of perjury before it, including but not limited to the recantation, before reaching this conclusion." *Id.* Indeed, the Second Circuit has found it reversible error for a district court "to focus exclusively on the credibility of [the] recantation and, in so doing, not to give proper weight to the other evidence of ... perjury at trial." *Id.* at 108.

Here, the other evidence available to both the state court and this Court only bolsters the finding that Rodriguez testified truthfully at trial insofar as he averred that he had not been involved in the attack on Mercado. As noted by the state court and Magistrate Judge Ellis in his Report, Cordero was positively identified as the assailant by five eyewitnesses, including the victim. Moreover, the victim expressly stated during his trial testimony, when asked if Rodriguez—rather than Cordero—had attacked him:

> No, not at all. [Rodriguez]'s a, he's a face that I remember seeing in the neighborhood on more than one occasion in my life. It's the kind of thing where had I, you know, had I, you know, had I seen him when everything was happening I would have, you know, I would have recognized his face like at the time of the incident. He would have, he would have been one person that I recognized, but he wasn't, he wasn't there.

(Tr. 180.) And while petitioner now points to specific eyewitnesses who claim Rodriguez was involved and to some supporting evidence, virtually all of that testimony and evidence was presented at trial and was considered—and rejected as not credible—by the jury in the face of a body of evidence of Cordero's guilt the trial judge termed "overwhelming." (Transcript of Sentencing Proceeding dated Nov. 20, 2000 at 30.) [1]

Accordingly, review of the cumulative evidence further supports the state court's finding that Rodriguez's recantation was not credible. Petitioner's newly discovered evidence claim, thus, should be rejected.

### III. CONCLUSION

The Court thus adopts Magistrate Judge Ellis' recommendation that Cordero's habeas petition be denied in its entirety. The Court further finds for the reasons set forth above that Cordero's additional, newly discovered evidence claim is also insufficient to warrant post-conviction relief. Accordingly, IT IS HEREBY ORDERED that:

1. Magistrate Judge Ellis's Report and Recommendation dated April 2, 2009 is adopted;

2. The petition is deemed amended to include Cordero's newly discovered evidence claim, and, as amended, is dismissed on the merits;

3. As petitioner has not made a substantial showing of the denial of a

---

1. The only evidence Cordero relies on here that he did not present to the jury is an affidavit from the director of the women's shelter at which Rodriguez's girlfriend at the time, Janet Carasquillo, resided. The affidavit implies Carasquillo was in the shelter at the time of the assault and Cordero thus argues it belies Rodriguez's trial testimony that he was with Carasquillo the evening of the crime. (Aff. of Sister Winifred Danwitz undated ¶¶ 1–6, Ex. A to Petitioner's Objections to the Report and Recommendation.) That evidence, which does not appear to have been presented to the state court at any point, is insufficient on its own to warrant disturbing the state court's factual determination that Rodriguez's confession was not credible because, even if credited, the evidence supports only the conclusion that Rodriguez lied at trial about his companion on the night of the attack, not about his involvement in the crime.

constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; *see also Richardson v. Greene,* 497 F.3d 212, 217 (2d Cir.2007); and

4. Pursuant to 28 U.S.C. § 1915(a) the Court certifies that any appeal from this Order would not be taken in good faith.

SO ORDERED:

## REPORT AND RECOMMENDATION

RONALD L. ELLIS, United States Magistrate Judge.

**To the HONORABLE SIDNEY H. STEIN, U.S.D.J.:**

### I. INTRODUCTION

*Pro se* Petitioner, Angel Cordero, a New York state prisoner at Eastern New York Correctional Facility,[1] has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Petition was received by the *Pro Se* Office in this District on October 17, 2005. Cordero was convicted in Bronx County, New York, of attempted murder in the second degree (N.Y. PENAL LAW § 110/125.25(1)), robbery in the first degree (N.Y. PENAL LAW § 160.15(3)), assault in the first degree (N.Y. PENAL LAW § 120.10(1)), and resisting arrest (N.Y. PENAL LAW § 205.30). He was sentenced to three concurrent determinate sentences of fifteen years.

Cordero contends that his incarceration violates the United States Constitution because: 1) the trial court erroneously precluded the defense from calling a witness to contradict a State rebuttal witness's assertion; 2) the trial court erroneously ruled that a letter written by the complain-

ant to the probation department was not *Rosario* material; 3) the trial court erroneously refused to allow the defense to reopen its case, prior to summation, to recall a police officer and cross-examine him concerning four substantiated Civilian Complaint Review Board ("CCRB") complaints; 4) the trial court improperly denied his N.Y. CRIM. PROC. § 440 motion to vacate his sentence because the prosecutor suppressed material evidence about Dario Rodriguez's status as a police informant; and 5) the trial court improperly denied his N.Y. CRIM. PROC. § 440 motion to vacate his sentence because the prosecutor used a false statement in summation and failed to turn over DNA evidence. For the reasons set forth below, I recommend that this Petition be **DENIED.**

### II. BACKGROUND

#### A. Factual Background

##### 1. The Crime

Shortly after 2:00 a.m. on May 16, 1999, Jason Mercado, a freshman at Boston University, was walking home in the Bronx when he was assaulted and robbed by a group of five individuals. (Trial Transcript ("Tr.") at 157, 163.) Mercado was beaten and stabbed once in the chest before the attack was broken up by four plainclothes police officers, who had observed the attack from a nearby unmarked police vehicle. (*Id.* at 43–46.) Cordero was in the immediate vicinity of the assault, and tried to walk away when the police initially approached. (*Id.*) When a police officer attempted to detain Cordero, he resisted by punching one officer and attempting to grab another officer's gun. (*Id.*) Ultimately, Cordero and four other individuals, including Cordero's brother,

---

1. Cordero was a state prisoner at Coxsackie Correctional Facility when his federal petition was filed.

Ramon Rivas, were arrested at the scene of the attack. (*Id.*)

Mercado left the scene during the confusion that followed the arrival of the police, went home, and called for an ambulance. (*Id.* at 169–70.) Doctors later treated Mercado at a nearby hospital for a collapsed lung, and evacuated a large amount of blood and air that had accumulated in his chest. (*Id.* at 335.) His injuries were considered "potentially life-threatening." (*Id.* at 341.)

## 2. The Trial

Between June 15 and 29, 2000, Cordero and Rivas were tried together in the Bronx County Supreme Court before a jury. At trial, the defense did not dispute that Mercado had been assaulted and robbed, but denied that Cordero and Rivas were involved. (*Id.* at 21, 25.) The identity of Mercado's assailants became the central issue at trial, and the prosecution and defense each presented different theories about who was responsible for the attack. (Affidavit in Opposition, Jennifer Marinaccio ("Aff. in Opp'n"), October 24, 2006, ¶¶ 8–9.)

The prosecution presented five eyewitnesses, Mercado and the four police officers, who each testified that Cordero participated in the assault and robbery. (*Id.* ¶ 8.) Mercado testified that Cordero (identified by Mercado for the first time at trial) approached him as he was walking home, pulled out a knife, and demanded that he take off a red shirt he was wearing. (Tr. at 144–45.) After Mercado took off his shirt, Cordero demanded money. (*Id.* at 157.) As Mercado struggled to get his money, Cordero was joined by four other individuals, including Rivas, who demanded that Mercado also give up his watch. (*Id.* at 163.) When Mercado tried to take off his watch, the group attacked him. (*Id.* at 164.) During the attack,

Mercado testified that he saw Cordero stab him in the left side of his chest with a knife (*id.* at 166), and that the attackers took his watch, his red shirt, his Boston University student I.D. card, a credit card, an ATM card, and two dollars in cash (*id.* at 174). According to Mercado, the entire incident lasted a little more than one minute. (*Id.*) He stated that he escaped his attackers after the police arrived, and that he walked to his house, where his brother called for an ambulance. (*Id.* at 168–70.) Doctors at the hospital treated Mercado for his chest wound, and he remained in the hospital for a week. (*Id.* at 171.)

Sergeant Michael Delaney, and Officers Chon Kim, Mark Kurys, and Ricardo Cordero, testified and corroborated Mercado's testimony. The officers testified that they were dressed in plain clothes and were driving in an unmarked police cruiser when they saw a group of individuals, including Cordero, Rivas, Julio Sanchez, Gregory Martin, and Pierre Robinson, assaulting Mercado. (*Id.* at 43–48, 253, 434, 356.) They saw the group beating Mercado and trying to steal his watch. (*Id.*) Three of the officers testified that they saw Cordero stab Mercado in the left rib cage. (*Id.* at 47, 434, 356–57.) Each of the officers testified that when they attempted to arrest Cordero, he resisted arrest and tried to take Officer Kurys's gun. (*Id.* at 64, 255, 358–59, 436.) Ultimately, the police arrested Cordero, Rivas, Sanchez, Martin, and Robinson. (*Id.* at 46.) Robinson pled guilty to assaulting Mercado. (*Id.* at 664.)

The defense's theory was that Cordero and Rivas, neither of whom had any previous criminal history, were not involved in the assault and were misidentified. Cordero and Rivas testified that they did not rob or assault Mercado. (*Id.* at 785, 838.) They testified that they were in the area when the assault occurred and wan-

dered towards the commotion because they were curious. (*Id.*) Cordero and Rivas asserted that they were mistakenly arrested by the police in the aftermath of the assault. (*Id.*) To support Cordero's and Rivas's testimony, the defense presented evidence that Dario Rodriguez, a neighborhood drug-dealer, was Mercado's actual assailant. This evidence consisted primarily of the testimony of three witnesses. First, Guisha Rosa ("Rosa") testified that when she was dating Rodriguez, he had confessed to her that he had "stabbed a kid." (*Id.* at 618.) Second, Robinson testified that he saw Rodriguez stab Mercado and run away before the police could arrest him. (*Id.* at 654.) Finally, Awilda Carrasquillo testified that from the window of her apartment she saw Rodriguez stab someone in front of a crowd of people. (*Id.* at 723.)

The prosecution challenged the defense's theory about Rodriguez's involvement in the attack through the testimony of Mercado and Rodriguez. Mercado testified that he saw Rodriguez through a two-way mirror at the District Attorney's Office, and recognized Rodriguez as someone he had seen around the neighborhood. (*Id.* at 180.) Mercado stated that there was no question in his mind that Rodriguez was not the person who attacked him. (*Id.* at 18.) The prosecution later called Rodriguez as a rebuttal witness, and he testified that he did not stab Mercado. (*Id.* at 886.) Rodriguez said that he was at a party with Cordero and Rivas on the night that Mercado was assaulted. (*Id.*) He stated that he left the party around 2:00 a.m. and went home with his child's mother, Janet Carrasquilla. (*Id.* at 893.) He testified that as they were walking home he saw a commotion involving a number of cops, but did not stop. (*Id.* at 894.) He also testified that Rosa was his ex-girlfriend, and that she had told him that Cordero's family had "pressured" her into making up a

story about Rodriguez confessing. (*Id.* at 882.)

After Rodriguez's testimony, the defense asked permission to recall Rosa and Yadira Zapata to testify as rebuttal witnesses. The court refused to allow Rosa to testify as a rebuttal witness, saying that the subject-matter of her proposed testimony was a collateral issue and should be precluded. (*Id.* at 925, 978.) The court allowed the defense to call Zapata, who testified that she was in the area of the assault shortly after it occurred and that a few days after the incident, she spoke to Rodriguez. (*Id.* at 946.) Rodriguez told her that he was feeling "sorry" that Cordero and Rivas had been arrested because he had stabbed "Jason." (*Id.* at 947.) According to Zapata, Rodriguez told her that he had gotten into an argument about a girl with Mercado at a party on the night of the stabbing. (*Id.*) The argument had escalated, and he had stabbed Mercado. (*Id.*)

The jury spent two days deliberating before convicting Cordero and Rivas on June 28, 2000, of attempted murder, robbery, and assault. (*Id.* at 1190, 1192.) The jury also found Cordero guilty of resisting arrest. (*Id.* at 1190.) Both Cordero and Rivas were sentenced on November 20, 2000, to fifteen years imprisonment. (Sentencing Hearing Transcript ("Sent. Tr."), Nov. 20, 2000 at 30.)

### B. Procedural Background

Cordero appealed his conviction to the Appellate Division and raised four claims: 1) by precluding the defense from recalling a rebuttal witness, the court violated his right to due process, confrontation, and to present a defense; 2) the court erroneously ruled that a letter written by Mercado was not *Rosario* material; 3) the court erroneously refused to allow the defense to reopen its case, prior to summation, to

recall a police officer and cross-examine him concerning four substantiated CCRB complaints, depriving Cordero of due process and the right to confrontation; and 4) his fifteen-year sentence was excessive and should be reduced in the interests of justice. *See People v. Cordero*, 306 A.D.2d 9, 760 N.Y.S.2d 477 (2003). The Appellate Division affirmed the conviction on June 3, 2003, and the New York Court of Appeals denied leave to appeal on September 30, 2003, *People v. Cordero*, 100 N.Y.2d 619, 767 N.Y.S.2d 402, 799 N.E.2d 625 (2003).

The Appellate Division reversed Rivas's conviction on the grounds that he had been deprived of his right to be present when the jury read its verdict, and remanded the case for retrial. *People v. Rivas*, 306 A.D.2d 10, 762 N.Y.S.2d 34 (2003). Rivas then pled guilty to attempted murder in the second degree, and was sentenced to six years' imprisonment. (Aff. in Opp'n ¶ 16.)

On July 6, 2004, Cordero moved pursuant to N.Y. CRIM. PROC. § 440.10 to vacate his conviction on the grounds that: 1) the prosecution suppressed *Brady* material regarding the informant status of Rodriguez; 2) the prosecution falsely argued that blood on the jeans recovered from Cordero and Rivas had come from Mercado when, before entry of judgment, the prosecution knew, but did not disclose, that the blood did not belong to Mercado; and 3) the conviction was obtained through the perjured testimony of Rodriguez. (*Id.* ¶ 22.) On February 22, 2005, the court denied Cordero's motion. (*Id.*, Ex. 7.) The Appellate Division, First Department, denied Cordero's request for leave to appeal the denial of his § 440.10 motion on June 28, 2005. (*Id.* ¶ 25.)

On October 17, 2005, Cordero filed the instant Petition. (*Id.* ¶ 26.) On November 28, 2006, Rodriguez signed a notarized four-page statement in which he confessed that he stabbed Mercado, and stated that Cordero was not involved. (Affirmation in Support of Motion to Vacate Judgment, Claudia S. Trupp, Feb. 28, 2007, at 2.) Based on this new evidence, Cordero filed a motion in state court to vacate pursuant to N.Y. CRIM. PROC. § 410.10(1)(g)(h). (*Id.*) Both Petitioner and Respondent agreed to stay proceedings in this Court while Cordero's motion was litigated in state court. (Claudia S. Trupp's Letter to the Court, Feb. 6, 2007.)

On October 22, 2007, a hearing was conducted in the Bronx County Supreme Court to determine if the court should vacate Cordero's conviction. (*People v. Cordero*, Indictment No. 03393/1999, Decision & Order, Jan. 22, 2008 at 3.) Rodriguez was the only witness who testified at the hearing, and stated that he stabbed Mercado. (*Id.* at 7.) On January 22, 2008, the court denied Cordero's motion, holding that the newly discovered evidence would not have changed the outcome of Cordero's trial. (*Id.* at 17.) The Appellate Division denied Cordero's request for leave to appeal the decision on April 4, 2008. *People v. Cordero*, M–1152, Ind. No. 3393/99 (1st Dept. April 4, 2008).[2]

## III. DISCUSSION

### A. Threshold Issues

#### 1. Timeliness

■ A petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final. *See*

---

2. Cordero has not amended his federal habeas petition to include a newly discovered evidence claim about Rodriguez's recent confession. Although the claim now appears to be exhausted and may raise a cognizable federal issue, the Court will not review the state courts' decisions *sua sponte.*

28 U.S.C. § 2244(d)(1). A conviction becomes final " 'when [the] time to seek direct review in the United States Supreme Court by a writ of certiorari expire[s],' " that is, ninety days after the final determination by the state court. *Williams v. Artuz,* 237 F.3d 147, 150 (2d Cir.2001) (*quoting Ross v. Artuz,* 150 F.3d 97, 98 (2d Cir.1998)). The statute of limitations is tolled from the time post-conviction motions are filed until leave to appeal is denied. 28 U.S.C. § 2244(d)(2); *see also Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000).

Cordero's conviction became final on December 29, 2003, ninety days after the Court of Appeals denied his leave to appeal. Approximately seven months later, he filed a § 440.10 motion in state court. His motion was denied, and his leave to appeal was denied on June 28, 2005. On October 17, 2005, three and a half months following the final resolution of his state post-conviction motion, the *Pro Se* Office in this District received Cordero's federal habeas petition. Therefore, Cordero's Petition is timely because, excluding the tolled time, it was filed within one year of his conviction becoming final.

### 2. Exhaustion

■■■ Pursuant to 28 U.S.C. § 2254(b), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), courts may not grant a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997). In order to satisfy substantive exhaustion, a petitioner's claim before the state courts must have been federal or constitutional in nature. Although not an exacting standard, a petitioner must inform state courts of " 'both the factual and the legal premises of the claim [he] asserts in federal court.' " *Jones v. Vacco,* 126 F.3d 408, 413 (2d Cir.1997) (*quoting Daye v. Attorney General of State of New York,* 696 F.2d 186, 191 (2d Cir.1982) (*en banc* )). Procedurally, the petitioner must utilize all avenues of appellate review within the state court system before proceeding to federal court. *See Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994). He must raise each federal claim at each level of the state court system, "present[ing] the substance of his federal claims 'to the highest court of the pertinent state.' " *Id.* (*quoting Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990)).

There is no dispute that all of Cordero's claims were raised at every level of state appellate review and are procedurally exhausted.[3] With the exception of Cordero's *Rosario* claim, which will be discussed below, there is no dispute that each of Corde-

---

**3.** Even where the Respondent does not challenge Petitioner's claims on exhaustion grounds, the Court has an independent obligation to ensure that this requirement has been met, unless expressly waived by the State. *See* 28 U.S.C. § 2254(b)(3). As presented above, Cordero's first three claims were brought to the Appellate Division on appeal and, after that court rejected his claims, leave was denied by the Court of Appeals, thereby exhausting these claims for federal habeas purposes. Cordero's fourth and fifth claims are the result of his § 440.10 motion to vacate his judgment, brought to the trial court and, after his claims were denied, leave to appeal to the Appellate Division was denied. Appeal by a defendant to the Appellate Division of an order denying a § 440.10 motion "to vacate a judgment other than one including a sentence of death" is not an appeal of right. *See* N.Y. Crim. Proc. § 450.15(1). Therefore, when Cordero was not granted leave to appeal, his avenue for presenting the claims to New York state courts had ended, and the claims within his § 440.10 motion became exhausted for federal habeas purposes.

ro's claims raised a federal constitutional question. Therefore, Cordero's claims, with the exception of the *Rosario* claim, are properly before the Court because they are all procedurally and substantively exhausted.

### 3. Procedural Bar

■■■ A claim is precluded from habeas review if: (1) the state court declined to address the petitioner's federal claim because petitioner failed to meet a state procedural requirement, and (2) the state court decision rested on an independent and adequate state ground. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Jones v. Vacco,* 126 F.3d 408, 414 (2d Cir.1997) (*citing Ellman v. Davis,* 42 F.3d 144, 147 (2d Cir.1994)). A state law ground is "adequate" if "the state's insistence on compliance with its procedural rule serves a legitimate state interest." *Wainwright v. Sykes,* 433 U.S. 72, 83, n. 8, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (*quoting Henry v. Mississippi,* 379 U.S. 443, 447, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965)). "The Second Circuit has recognized that New York's preservation rule typically constitutes an independent and adequate state procedural ground on which the Appellate Division may deny a criminal defendant's appeal." *Kemp v. New York,* No. 07 Civ. 6996(RMB)(HBP), 2009 WL 306258, at *9 (S.D.N.Y. Feb. 9, 2009) (*referencing Garcia v. Lewis,* 188 F.3d 71 (2d Cir.1999); *Clark v. Perez,* 510 F.3d 382 (2d Cir.2008); *Richardson v. Greene,* 497 F.3d 212 (2d Cir.2007)); *see also Cotto v. Herbert,* 331 F.3d 217, 239–40 (2d Cir.2003) (clarifying scope of adequacy requirement for state procedural bar of claim then brought in federal habeas petition). A petitioner can overcome this procedural bar if he can show cause for the default and actual prejudice, or "demonstrate that failure to consider the federal claim will result in a

fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546 (internal citations and quotations omitted).

Cordero's first claim, that the trial court erroneously precluded the defense from calling a witness to contradict an assertion by one of the State's rebuttal witnesses, is procedurally barred. The state appellate court declined to review the claim on appeal because it was unpreserved by Cordero's lawyer at trial. *Cordero,* 760 N.Y.S.2d at 478. The court held that under state law Cordero could not rely on his codefendant's request to preserve an issue for appeal. *Id.; see People v. Buckley,* 75 N.Y.2d 843, 552 N.Y.S.2d 912, 552 N.E.2d 160, 162 (1990). Cordero has failed to explain the cause for his failure to preserve the issue at trial or show that failure to consider this claim will result in a fundamental miscarriage of justice. Therefore, this claim is barred from federal habeas review.

The remaining claims were reviewed by the state courts on the merits. *See Cordero,* 760 N.Y.S.2d at 478; (*see also* Aff. in Opp'n, Ex. 7.)

### B. Merits of Claims

#### 1. Standard of Review

■■■ AEDPA constrains a federal habeas court's ability to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. It limits issuance of the writ to circumstances in which the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision is contrary to federal law if the state court

applies "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413, 120 S.Ct. 1495. Furthermore, in cases where the state court decision rests on a factual determination, the federal court must find that the "decision ... was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" to overturn the state court decision. 28 U.S.C. § 2254(d)(2).

### 2. Cordero's First Claim

Cordero contends that the trial court violated his rights under the Confrontation Clause by precluding the defense from re-calling Guisha Rosa to impeach Rodriguez's testimony that Cordero's family pressured her to testify. (Pet. at 5.) Even if this claim were not procedurally barred, it is meritless because the trial court's decision was not contrary to, or an unreasonable application of, federal law.

■ Surrebuttal evidence is typically admissible to respond to any new issues brought up during rebuttal. *United States v. King*, 879 F.2d 137, 138 (4th Cir.1989), *cert. denied*, 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 206 (1989). The decision whether to admit such evidence is left to the "sound discretion" of the trial court, *United States v. Williams*, 283 F.Supp.2d 850, 856 (E.D.N.Y.2003) (*quoting United States v. Wilford*, 710 F.2d 439, 452 (8th Cir.1983)); *see also United States v. Stirling*, 571 F.2d 708, 736 (2d Cir.1978), *cert. denied*, 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978), and is reviewed only for abuse of discretion, *see United States v. Mitan*, 966 F.2d 1165, 1176 (7th Cir. 1992) (*quoting United States v. Chapman*, 954 F.2d 1352, 1374 (7th Cir.1992)).

Upon review of the record, it does not appear that the trial judge abused his discretion by precluding the defense from calling Rosa as a surrebuttal witness. Cordero asserted on appeal that Rosa's testimony was intended to contradict Rodriguez's testimony that Cordero's family had pressured her to lie. (Pet. at 5.) At trial, however, Cordero had proffered that Rosa would testify that Rodriguez had threatened her and told her to call the District Attorney's Office to recant her testimony. (Tr. at 978.) Since the alleged threat occurred after Rosa had testified, the trial judge determined that the threat could not have influenced her earlier testimony. (*Id.*) The judge concluded that Rosa's testimony about the alleged threats was collateral to the issues in the case and refused to allow her as a surrebuttal witness. (*Id.*) The judge did not abuse his discretion, and his decision was not contrary to, or an unreasonable application of, federal law. Were it not procedurally barred, Cordero's first claim should be **DENIED** on the merits.

### 3. Cordero's Second Claim

■ Cordero contends that the prosecution violated *People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), by failing to provide the defense with a copy of a letter written by Mercado before trial. (Pet. at 10.) In the letter, written to the Department of Probation months before trial, Mercado discussed the emotional pain that the assault had caused him. (*Id.*) He expressed hope that those who had assaulted him would get what they deserved. (*Id.*) The prosecution gave a copy of the letter to the defense after the trial but before the sentencing hearing. (Sent. Tr. at 8.) At the hearing, the court ruled that the letter did not directly mention the defendants and, therefore, was not *Rosario* material. (*Id.*)

■ In New York, a state prosecutor must disclose any statement of a witness whom the prosecution intends to call at the hearing or trial which is in the prosecutor's possession or control and relates to the subject matter of the witness's testimony. *Rosario,* 213 N.Y.S.2d 448, 173 N.E.2d at 882–83. Federal courts typically find that *Rosario* obligations arise solely under state law, and as such are outside the scope of what they may review in habeas cases.[4] *See Lineberger v. Conway,* No. 03 Civ. 1645(KMW)(RLE), 2008 WL 513203, at *7 (S.D.N.Y. Feb. 26, 2008); *see also Ellis v. Phillips,* No. 04, Civ. 7988(SHS)(AJP), 2005 WL 1637826, at *27 (S.D.N.Y. July 13, 2005); *Landy v. Costello,* 141 F.3d 1151, 1998 WL 105768, *1 (2d Cir.1998); *Senor v. Greiner,* No. 00 Civ. 5673(JG), 2002 WL 31102612, at *12 (E.D.N.Y. Sept. 18, 2002); *Green v. Artuz,* 990 F.Supp. 267, 274–75 (S.D.N.Y.1998).

Therefore, Cordero's claim that the prosecutor failed to turn over *Rosario* material, and that the trial court improperly concluded that it was not *Rosario* material, cannot be addressed by this Court because it fails to raise a question cognizable under federal habeas corpus review. This claim should be **DENIED.**

### 4. Cordero's Third Claim

■ Cordero contends that the trial court's refusal to allow the defense to recall and cross-examine Sergeant Delaney about four substantiated CCRB complaints violated his rights under the Confrontation Clause of the Sixth Amendment. (Pet. at 15.) At trial, Cordero's attorney asked permission to recall Sergeant Delaney after both sides had rested but prior to summation. (*Id.*) Cordero asserts that the CCRB complaints he received on the last day of trial would have undermined the credibility of two eyewitnesses, Sergeant Delaney and Officer Kurys, because the complaints found that both had previously offered incredible testimony in addition to other abuses of authority. (*Id.*) Defense counsel was not able to ask Sergeant Delaney about the complaints when he was first cross-examined because the CCRB had belatedly responded to a subpoena. (Respondent's Memorandum of Law ("Resp. Mem."), Oct. 23, 2006, Ex. 3 at 51.) Respondent contends that the trial court's refusal to allow the defense to recall Sergeant Delaney was not contrary to, or an unreasonable application of, federal law. (*Id.* at 10.)

■ The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to cross-examine witnesses. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). It requires that the defense have the opportunity to inquire about a witness's credibility and reliability. *Id.* The right to cross-examine, however, is not unlimited. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The Confrontation Clause "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (emphasis in the original). Trial judges retain wide latitude to impose reasonable limits on cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." *Id.; see also United States v. Flaharty,* 295

---

**4.** However, when a *Rosario* claim is framed as a claim of prosecutorial misconduct it is cognizable by a federal habeas court. *Lineberger,* 2008 WL 513203, at *1, n. 1 (*referencing Fox v. Mann,* 71 F.3d 66, 72 (2d Cir. 1995)).

F.3d 182, 190 (2d Cir.2002). If a reviewing court determines that the denial of a defendant's opportunity to impeach a witness for bias or credibility was constitutionally improper, the denial is subject to a harmless-error analysis. *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. 1431. Under that analysis, "the correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Id.*

Cordero's claim should be denied because the trial court's refusal to allow the defense to recall Sergeant Delaney was not contrary to, or an unreasonable application of, federal law. The defense had the opportunity to cross-examine him about the CCRB complaints when he first testified. The defense failed to cross-examine Sergeant Delaney about the CCRB complaints because it failed to follow up on a subpoena until the trial was underway. (Tr. at 1007–08.) It was the defense's burden to discover the CCRB complaints because the prosecution was not obligated to investigate and disclose the CCRB complaints of the police officers who testified. (*Id.*) The trial court used its discretion to determine that recalling Sergeant Delaney as a witness after both sides had rested would unduly delay the trial because it would require an *in camera* review of all of the documents and hearings about the definition of a substantiated complaint. (*Id.* at 1007, 1009.) The trial judge determined that the case should not be delayed as a result of the defense's failure to discover documents in a timely manner. (*Id.* at 1007–09.) Therefore, the trial court's decision to preclude the defense from recalling Sergeant Delaney was not an abuse of discretion and was a reasonable limit on cross-examination that did not violate Cordero's rights under the Confrontation Clause. This claim should be **DENIED**.

### 5. Cordero's Fourth Claim

Cordero contends that the state court erred when it denied his post-conviction motion alleging that the prosecution improperly withheld evidence that Rodriguez was a police informant in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). (Pet. at 17.) Cordero asserts that Rodriguez's status as a police informant was critical impeachment evidence because it provided a motivation for the police to lie about Rodriguez's involvement in the assault. (*Id.* at 18.) Additionally, Cordero argues that Rodriguez's status as an informant undermined his credibility as a witness because the jury could infer that he was the type of person who would say anything to stay out of trouble. (*Id.*) Respondent argues that Rodriguez was not a police informant, and there was no evidence suppressed. (Resp. Mem. at 15.)

 The prosecution may not suppress evidence favorable to an accused "where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. 1194. Suppression of such evidence is a violation of due process and unfair treatment towards the accused, possibly rendering the trial inequitable. *Id.* The government has an affirmative duty to disclose exculpatory material or impeachment evidence, regardless of whether it is requested by the defense. *United States v. Jackson*, 345 F.3d 59, 68–69 (2d Cir.2003). A new trial is not, however, granted automatically even if a court finds that evidence possibly useful to the defense was withheld. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The court must find that the evidence is material. *Id.* Evidence is considered "material"

if there is a reasonable probability that, had the evidence been disclosed, the result of the court proceeding would have been different. *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Three elements therefore comprise a successful *Brady* claim: 1) the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; 2) the evidence must have been suppressed by the State, either willfully or inadvertently; and 3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *United States v. Brunshtein*, 344 F.3d 91, 101 (2d Cir.2003); *see also United States v. Bishop*, No. 06 Cr. 327A (HBS), 2007 WL 4166049, at *3 (W.D.N.Y. Nov. 19, 2007) (*quoting United States v. Jimenez*, 789 F.2d 167, 170 (2d Cir.1986)).

Cordero's claim fails because he has not demonstrated that Rodriguez was actually an informant and therefore cannot show that the police suppressed such evidence. Cordero's evidence regarding Rodriguez's status as an informant is extremely speculative. First, Cordero relies upon the failure of the police to explicitly deny that Rodriguez was an informant in response to a Freedom of Information ("FOIL") request. (Pet. at 19.) In that request, Cordero asked for any information about Rodriguez's cooperation with the investigation of the Bryant Avenue Organization, a group that was investigated for heroin distribution. (*Id.*) In response, the police department refused to answer, stating that the requested information would endanger the well-being of a confidential source. (*Id.*) Cordero argues that if Rodriguez was not an informant, the police department would have been expected to inform the defense that it had no document responsive to its FOIL request. (*Id.*) Because the police did not do so, Cordero asserts that they have conceded that Rodriguez

was an informant. (*Id.*) Furthermore, Cordero argues that at Rivas's retrial the prosecution conceded that Rodriguez was an informant when it argued that the information was not *Brady* material. (*Id.*) In response to Cordero's highly speculative allegation, Respondent has submitted evidence that the New York City Police Department has conducted an extensive review of records, pertaining to informants past and present, and determined that Rodriguez is not, and was not, an informant. (Aff. in Opp'n ¶ 21.) This finding is entitled to deference under AEDPA. Therefore, the state court appropriately dismissed Cordero's post-conviction motion because Cordero failed to show that the prosecution actually suppressed evidence in violation of *Brady*.

Even if Cordero had produced enough evidence to show that the prosecution had suppressed evidence of Rodriguez's status as a police informant, Cordero would still not be entitled to relief. Rodriguez's status as a police informant for a drug organization was not essential to the defense because it would not have necessarily undermined his credibility as a rebuttal witness in a case about an unrelated assault. Moreover, Rodriguez's status as an informant would not have been enough to overcome the testimony of five eyewitnesses who testified to Cordero's involvement in the assault and robbery. Cordero's further assertion that Rodriguez's status as an informant would have undermined the credibility of the police officers who testified has no support. The argument that four police officers would conspire to protect a man they saw stab and rob a random, innocent passerby simply because he was a police informant is based only on speculation. Thus, Rodriguez's alleged status as a police informant was not material evidence because there is not a reasonable probability that disclosure of Rodri-

guez's status, were it true, would have led to a different verdict. Cordero's claim is without merit because the state court denial of his claim was not an unreasonable application of federal law. This claim should be **DENIED.**

### 6. Cordero's Fifth Claim

Cordero contends that the trial court erred in denying his post-conviction motion that the prosecutor made false statements during summation and failed to turn over crucial DNA evidence. (Pet. at 24.) He asserts that the prosecutor falsely argued in summation that the blood recovered from Rivas's jeans came from Mercado. (*Id.*) The statement undercut the defense argument that Rivas and Cordero were latecomers to the incident and had not participated in the assault. (*Id.*) After the trial and before sentencing, however, the prosecution received DNA test results that conclusively showed that the blood on Rivas's jeans did not come from Mercado. (Resp. Mem. at 25.) Cordero argues that the evidence was exculpatory and the prosecution improperly failed to disclose it prior to sentencing. (Pet. at 24.) Respondent contends that the trial court's decision denying Cordero's claim was not contrary to, or an unreasonable application of, clearly established federal law. (Resp. Mem. at 21.)

In determining whether a petitioner's due process rights were denied by arguments made by a prosecutor during summation, a petitioner must demonstrate that the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (*quoting Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). A distinction must be made "between ordinary trial error of a prosecutor and [the] sort of egregious misconduct held ... to amount to a denial of a constitutional due process." *Donnelly,* 416 U.S. at 647–48, 94 S.Ct. 1868; *see also Tankleff v. Senkowski,* 135 F.3d 235, 252 (2d Cir. 1998). The reviewing court must determine whether the prosecutor's actions "were so prejudicial that they rendered the trial ... fundamentally unfair." *Fox v. Mann,* 71 F.3d 66, 72 (2d Cir.1995) (*quoting Floyd v. Meachum,* 907 F.2d 347, 353 (2d Cir.1990)).

Here, the Court finds that Cordero's due process rights were not denied by the prosecutor's arguments in summation. The prosecutor stated that Rivas's jeans had not been tested and suggested that the blood came from Mercado. (Tr. at 1089–90 ("These items were not tested, but if they had been tested, if it had been conclusively established that that blood belonged to Jason Mercado, what would that had meant?" *Id.* at 1089.).) At the time of summation, however, the prosecutor did not know otherwise. (Aff. in Opp'n ¶ 12.) The DNA testing was completed two and a half months after the trial ended. (*Id.*) Moreover, the prosecutor's statement, while false, was not so prejudicial that it rendered the trial fundamentally unfair. The evidence of Cordero's guilt was substantial and the prosecutor's statement about the origin of the blood on Rivas's jeans does not appear to be a determinative factor in the jury's verdict. Thus, Cordero's due process rights were not violated by the prosecutor's statements during summation.

Additionally, Cordero's due process rights were not violated as a result of the prosecution's failure to disclose the DNA analysis prior to sentencing. The DNA results did not exculpate Cordero because they only showed that Mercado's blood was not on Rivas's jeans. The DNA evidence was therefore not material to the

prosecution's case against Cordero. Although the evidence would have been useful to the defense's theory that both Cordero and Rivas were latecomers to the incident, it is doubtful that it would have altered the jury's ultimate conclusion given the strength of the prosecution's case. Therefore, Cordero's due process rights were not violated by the failure of the prosecution to turn over DNA evidence. This claim should be **DENIED.**

## IV. CONCLUSION

For the foregoing reasons, I recommend that Cordero's petition for a writ of habeas corpus be **DENIED.** Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Sidney H. Stein, 500 Pearl Street, Room 1010, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp.1995); FED. R. CIV. P. 72, 6(a), 6(d).

**DATED: April 2, 2009.**

**New York, New York.**